MCI TELECOMMUNICATIONS CORPORATION, Appellant,

v.

The UNITED STATES, Appellee,

and

AT & T Communications, Inc. and US Sprint Communications Company, Intervenors–Appellees.

No. 89–1307.

United States Court of Appeals, Federal Circuit.

June 15, 1989.

William A. Roberts, III, Howrey & Simon, Washington, D.C., argued for appellant. With him on the brief were Lee Curtis, Anne H. Warner and Harvey G. Sherzer. Also on the brief were John Worthington, John A. Fraser and Allen S. Hammond, MCI Communications Corp., Washington, D.C., of counsel.

Martha H. DeGraff, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With her on the brief were John R. Bolton, Asst. Atty. Gen., and David M. Cohen, Director.

C. Stanley Dees, McKenna, Conner & Cuneo, Washington, D.C., argued for intervenors-appellees AT & T Communications, Inc. With him on the brief were D. Michael Fitzhugh, William R. Stoughton, Patrick K. O'Keefe, Alvin D. Hooper and G. Ridgley Loux.

Thomas C. Wheeler, Pettit & Martin, Washington, D.C., represented U.S. Sprint Communications Co., intervenors-appellees.

Before MARKEY, Chief Judge, ARCHER and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

MCI Telecommunications Corporation (MCI) appeals the order of the General Services Administration Board of Contract Appeals (board), GSBCA No. 9926–P (February 23, 1989), dismissing MCI's bid protest for lack of jurisdiction because MCI is not "an interested party" with respect to the contract award it seeks to overturn. We affirm.

### Background

On January 7, 1987, the General Services Administration (GSA) issued a request for proposals from contractors interested in providing telecommunications services for either of the networks to comprise the Federal Telecommunications System (FTS) 2000. The FTS 2000 networks are intended to provide the federal government with switched voice, switched data, packet switched, video transmission, switched digital integrated, and dedicated transmission telecommunications services for a ten year contract period. In response to the solicitation, AT & T Communications, Inc. (AT & T), Martin Marietta Corporation (MMC), and US Sprint Communications Company (US Sprint) submitted proposals. MCI, the would-be protestor in this case, did not participate in the bidding process. That is, although it did become a major subcontractor under MMC's proposal, it did not itself submit its own proposal at any time during the proposal period.

After reviewing the proposals which were submitted, the GSA, on December 7, 1988, awarded the contract for one of the FTS 2000 networks to AT & T, and for the other to US Sprint. Believing that AT & T's proposal failed to conform with material, mandatory requirements of the solicitation, and that the GSA, after awarding that contract to AT & T, impermissibly waived mandatory contract requirements rather than resolicit the contract, MCI sought to challenge the award of the contract by bringing a protest before the GSA board. The Competition in Contracting Act, 40 U.S.C. § 759 (Supp. V 1987), specifically subsection (f), provides for the board's resolution of bid protests for the type of automatic data processing equipment needed for the FTS 2000 networks. Under subsection (f)(1), the board is empowered to hear such protests upon request of "an interested party."

> [T]he term "interested party" means, with respect to a contract or proposed contract described in subparagraph (A), *an actual or prospective bidder* or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.

40 U.S.C. § 759(f)(9)(B) (emphasis added).

After MCI filed its protest, AT & T and US Sprint, as awardees, moved for and were granted status as intervenors of right. Following a pre-hearing conference, GSA and AT & T filed motions to dismiss the protest, alleging various infirmities in MCI's protest, including that MCI is not an interested party. With respect to the interested party issue, MCI responded by arguing that, although it was not an "actual offeror or bidder" with respect to the original solicitation, it is a "prospective bidder or offeror" in the event of a resolicitation, and that its economic interest is directly affected by the award to AT & T.

On February 23, 1989, the board ruled that MCI was not an interested party and, therefore, dismissed MCI's protest. Accepting that MCI was not an actual bidder, the board considered whether MCI is properly viewed as a prospective bidder. The board determined that it is probable that if acceptance of AT & T's alleged nonconforming proposal were ruled impermissible, the likely remedy would be a further round of negotiations with AT & T or a direct award to another offeror. Therefore, the board reasoned, a resolicitation is not likely and thus MCI is not likely ever to have the opportunity to submit a bid on the network. Accordingly, in the board's view, MCI is not a prospective bidder. Since MCI was neither an actual nor prospective bidder, it could not be an interested party. MCI appeals based on its argument that it would be a prospective bidder on a resolicitation and, therefore, is an interested party.

## OPINION

We have jurisdiction to decide this appeal under the Contract Disputes Act, 41 U.S.C. § 607(g) (1982) and under 40 U.S.C. § 759(f)(6)(A) (Supp. V 1987). Under the Contract Disputes Act, the board's "decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (1982). We may, however, freely review the board's legal conclusions. *Id.*

It is undisputed that MCI did not submit a proposal in response to the FTS 2000 solicitation anytime during the proposal period and, therefore, is not an *actual* bidder or offeror "with respect to [the] contract" under 40 U.S.C. § 759(f)(9)(B), as these words are plainly understood. Accordingly, to establish that it is an interested party, MCI must convince us that it is a *prospective* bidder or offeror, under a correct legal interpretation of that term. This case, then, poses the question whether a would-be protestor wishing to bring about a resolicitation on which it says it intends to bid has the necessary status, even though it failed to either bid in response to the original solicitation or to protest before the close of the proposal period for the original solicitation.

The government argues that "[t]he plain language of the statute does not provide that there can be any 'prospective' offeror after the time has passed for submitting proposals in response to a solicitation." In its view, the solicitation must be outstanding when protested in order for those having not yet submitted bids to be considered prospective bidders on the proposed contract. We agree.

In interpreting any statute, analysis begins with the language of the statute. *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1365 (Fed.Cir.1983) (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979)). And, absent a clear showing of contrary legislative intent, the plain meaning analysis of the statutory language begins and ends the judicial inquiry. *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482–83, 83 L.Ed.2d 472 (1984).

■ The language of section 759(f)(9)(B) plainly establishes, by use of the word "prospective," that, in order to be eligible to protest, one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation. After the date for submission of proposals has passed, however, the would-be protestor can no longer realistically expect to submit a bid on the proposed contract, and, therefore, cannot achieve prospective bidderhood with regard to the original solicitation. This is equally true whether the would-be protestor missed the deadline because it negligently failed to file a proposal, or, as here, because it deliberately chose to be only a subcontractor and not to submit its own proposal.

Our view as to the plain meaning of section 759(f)(9)(B) corresponds to the Ninth Circuit's construction of 31 U.S.C. § 3551(2) (Supp. IV 1986) in *Waste Management of North America, Inc. v. Weinberger*, 862 F.2d 1393 (9th Cir.1988). Section 3551(2) defines an interested party for purposes of bringing a protest before the General Accounting Office (GAO) rather than the GSA board, but uses language identical to section 759(f)(9)(B). Using what we view as persuasive reasoning, the court in that case determined that the would-be protestor, even though appearing to have a direct economic interest, was not an interested party because it neither bid nor protested before the close of the proposal period. *Waste Management*, 862 F.2d at 1398.

MCI argues that *Waste Management* is inapposite because the court misapplied section 3551(2) requirements for interested party status before GAO to determine standing to sue in a federal district court. Whether misapplied or not, the Ninth Circuit's interpretation of the particular words of section 3551(2) stands by itself, and is correct. Nothing MCI argues convinces us otherwise. Furthermore, nothing in the legislative history of section 759(f)(9)(B) suggests that this statutory phrase was intended to have some meaning other than its plain meaning.

Since the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends, MCI's stated intention to submit a proposal in response to any resolicitation, and its efforts to secure resolicitation by filing a protest, can do nothing to create the necessary interested party status. By the close of the proposal period, MCI had placed itself outside the boundaries of interested party status. That is where it must remain unless, owing to the acts of an interested party which actually submitted a proposal or filed a timely protest, a resolicitation results. Nothing later proven could alter the fact that MCI did not act on time to become an interested party with regard to the solicitation; since, at this point, that is the only solicitation that ever was, nothing alters the fact that MCI was not an actual or prospective bidder and, therefore, is not an interested party.

Accordingly, no matter how well founded MCI's charges that the GSA waived mandatory contract requirements and that a resolicitation should occur, MCI's argument that it is an interested party must be rejected. Based on our analysis, it was unnecessary and inappropriate for the board to determine the likelihood that

MCI's charges would result in a resolicitation of the contract.

Each of the arguments for reversal made by MCI has been considered and found unpersuasive. Accordingly, the board's decision is

AFFIRMED.