**US WEST COMMUNICATIONS SERVICES, INC., Appellant,**

v.

**The UNITED STATES, Appellee,**

**and**

**Westinghouse Hanford Company and United Telephone Company of the Northwest, Intervenors.**

**UNITED STATES, Appellant,**

v.

**UNITED TELEPHONE COMPANY OF THE NORTHWEST, Appellee.**

Nos. 89–1662, 90–1052.

United States Court of Appeals, Federal Circuit.

July 29, 1991.

---

Thomas P. Humphrey, II, Davis, Graham & Stubbs, Washington, D.C., argued, for appellant, U.S. West Communications Services, Inc. With him on the brief, was S. Neil Hosenball and Mark D. Colley.

Anthony H. Anikeeff, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee, The U.S. With him on the brief, were Stuart E. Schiffer, Acting Asst. Atty. Gen., and David M. Cohen, Director. Also on the brief, were I. Avrum Fingeret, Paul W. Lewis and Patricia D. Graham, Office of the Gen. Counsel, Dept. of Energy, Washington, D.C., of counsel.

Thomas Madden, Venable, Baetjer, Howard & Civiletti, Washington, D.C., argued, for intervenor, United Telephone Co. of the Northwest. With him on the brief, were William L. Walsh, Jr., James F. Worrall and J. Scott Hommer, III. Also on the brief, was Timothy J. Bonansinga, Gen. Counsel, United Telephone Co. of The Northwest, Hood River, Or., of counsel.

Richard O. Duvall, Timothy J. Bloomfield and Richard L. Moorhouse, Dunnells, Duvall, Bennett & Porter, Washington, D.C., were on the brief, for intervenor, Westinghouse Hanford Co.

Before ARCHER, Circuit Judge, BENNETT, Senior Circuit Judge, and RE, Chief Judge.*

ARCHER, Circuit Judge.

US West Communications Services, Inc. (US West), in No. 89–1662, appeals the decisions of the General Services Administration Board of Contract Appeals (GSBCA or board), taking jurisdiction under the Brooks Act, 40 U.S.C. § 759 (1988), as amended, and granting the bid protest of United Telephone Company of the Northwest (United). *United Telephone Co. of the Northwest*, 89–3 BCA ¶ 22,108, 111,189 (1989), and *United Telephone Co. of the Northwest*, 89–3 BCA ¶ 21,916, 110,269 (1989). The telecommunications system procurement at issue was made by the Westinghouse Hanford Company (Westinghouse), which was the management and operating (M & O) contractor for the United States Department of Energy (DOE) at its Hanford nuclear facility near Hanford, Washington. The United States, in No. 90–1052, appeals from that part of the board's decision which directed DOE and Westinghouse to award the contract for the subject procurement to United. The decision of the board is vacated for lack of jurisdiction and, accordingly, it is unnecessary to consider the merits of the bid protest of United. The appeal of the United States is moot.

I

This appeal involves a potential subcontractor's bid protest regarding the procurement by Westinghouse of an Integrated Voice/Data Telecommunications System (IVDTS) for the Hanford nuclear facility.

Westinghouse, as DOE's M & O contractor for this facility, had responsibility for its management, operation and maintenance, including the provision of information resources management. The latter required Westinghouse to provide high quality and reliable communications and telephone services.

The requirements for IVDTS were initially developed by Westinghouse's predecessor in 1985. Upon request by DOE, the General Services Administration (GSA) assigned the procurement of the IVDTS system to the predecessor of Westinghouse, *see* 40 U.S.C. § 759(b), and it issued a Request for Proposals (RFP) in 1986 to which five companies, including US West and United, responded. In 1987 Westinghouse was selected as the M & O contractor and assumed the responsibility for continuing the IVDTS procurement.[1] DOE's principal involvement in the IVDTS procurement was to oversee its M & O contractor to ensure that DOE's view of its requirements for the Hanford facility was reflected in the technical specifications.

Westinghouse's procurement team issued a major revision to the IVDTS procurement at which time only four vendors, including US West and United, responded. The proposals were evaluated and discussions were held with each vendor before Westinghouse issued a request to them for their best and final offers (BAFOs). US West, in its BAFO, objected to one of the requirements of the procurement. Westinghouse, believing that US West had misinterpreted the provision, wrote US West with its interpretation, after which the objection was withdrawn. After technical evaluations of the BAFOs were made, Westinghouse concluded that the proposals of both US West and United were strong, but ultimately selected US West because of its lower overall cost.

United protested Westinghouse's impending award of the contract to US West. It asserted that a former employee of DOE,

---

* Chief Judge Edward D. Re of the United States Court of International Trade, sitting by designation, was a member of the panel which heard argument but did not participate in this decision due to his retirement from the bench on April 30, 1991.

1. Prior to the time Westinghouse's procurement team was in place, DOE assumed responsibility for the procurement for a two-to-three month period in the early part of 1988.

who retired as its Telecommunications Branch Chief, had provided US West with sensitive information relating to the IVDTS procurement when he became associated with a company that acted as US West's consultant for that procurement. When Westinghouse denied United's challenge to the award of the contract to US West, United protested that decision to the GSBCA. United contended that both the alleged conflict of interest and the post–BAFO communication between Westinghouse and US West made the award of the contract to US West improper.

DOE, Westinghouse, and US West moved to dismiss the GSBCA proceeding for lack of jurisdiction on the basis that the Brooks Act applies only to *federal agency* purchases of automated data processing equipment (ADPE). The board denied the motions, concluding that the IVDTS procurement involved ADPE subject to the Brooks Act and that the GSBCA had jurisdiction. It determined that the statutory requirements for jurisdiction were satisfied because the procurement was "under a contract with a Federal agency"—the M & O contract between DOE and Westinghouse—and required the "significant use" of ADPE. *United Telephone*, 89–3 BCA ¶ 21,916 at 110,273. Although stating that an agency relationship between Westinghouse and DOE was not necessary to its jurisdiction, the board also concluded that Westinghouse was the "agent or conduit" of DOE. *Id.* at 110,273–74.

Following a trial on the merits, the board upheld United's protest. The board also directed DOE and Westinghouse to award the IVDTS contract to United.

## II

■■■ This appeal is brought under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988), and our review is governed by section 609(b). Under that section, the decision of the board on any question of law is not final or conclusive and is not binding on this court. *See American Elec. Laboratories, Inc. v. United States*, 774 F.2d 1110, 1112 (Fed.Cir.1985). We have said, however, that legal interpreta-

tions by tribunals having expertise are helpful, even if not compelling. *United States v. Lockheed Corp.*, 817 F.2d 1565, 1567 (Fed.Cir.1987). Also, if the board's reasoning and interpretation of law does not support its decision, that decision will nevertheless not be reversed or vacated if, as the government urges, there are other grounds to support its decision. *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 702 (Fed.Cir.1986) ("Although we disagree with the basis on which the Board decided the case, we affirm its decision on other grounds."). The question of whether the board has statutory authority to consider the protest of a potential subcontractor in a procurement of ADPE by a government prime contractor involves a pure legal issue.

US West, as appellant, and the United States, as appellee, are in agreement that the board erred in holding that it had jurisdiction for the two reasons set forth in its opinion. Both argue that Westinghouse's procurement of ADPE from a subcontractor is not subject to the Brooks Act and that Westinghouse was not acting in the capacity of a procurement agent for DOE. The United States, however, urges that the board should be considered as having jurisdiction under the facts of this case because of the unique relationship between DOE and its M & O contractor, in this case Westinghouse, which has been recognized in decisions and regulations of the General Accounting Office. United, as intervenor, supports the jurisdictional grounds relied on by the board as well as the alternative ground proposed by the United States.

## III

The board's jurisdiction over ADPE procurements is set forth in the Brooks Act, as amended. *See* 40 U.S.C. § 759. Section 759(f)(1) provides as follows:

(f)(1) Upon request of an interested party in connection with any procurement which is subject to this section (including procurements subject to delegation of procurement authority), the board of contract appeals of the General Services Administration ... shall review *any*

*decision by a contracting officer* alleged to violate a statute or regulation. Such review shall be conducted under the standard applicable to review of *contracting officer final decisions* by boards of contract appeals.

40 U.S.C. § 759(f)(1) (emphasis added). A proceeding before the board to contest the award of a contract is initiated by the filing of a protest, which is defined as:

a written objection by an interested party to a solicitation *by a Federal agency* for bids or proposals for a proposed contract for the procurement of property or services or a written objection to a proposed award or the award of such a contract.

40 U.S.C. § 759(f)(9)(A) (emphasis added).

As pertinent here, ADPE equipment is defined in the Brooks Act, as amended, as follows:

(2)(A) For purposes of this section, the term "automatic data processing equipment" means any equipment ... that is used ...

(i) by a Federal agency, or

(ii) under a contract with a Federal agency which—

(I) requires the use of such equipment, or

(II) requires the performance of a service or the furnishing of a product which is performed or produced making significant use of such equipment.

40 U.S.C. § 759(a)(2)(A).

 The government and US West both contend that the board erred in looking solely to the definition of ADPE in section 759(a)(2) in assessing its jurisdiction. The board stated that the controlling issue is whether the "procurement is subject to the Brooks Act, for if it is, a protest concerning the procurement may be decided by the Board." *United Telephone*, 89–3 BCA ¶ 21,916 at 110,273. It then held that "[t]he IVDTS is procured 'under a contract with a Federal agency'—the M & O contract between respondent [DOE] and Westinghouse.... Thus, the Brooks Act applies because the IVDTS is Brooks Act equipment under a contract with a Federal agency." *Id.*

The government and US West recognize that the definition of ADPE is broad. In their view, however, the statute and the legislative history require a conclusion that the board does not have jurisdiction over subcontractor procurements, even though the equipment being procured may fall within the statutory definition of ADPE. They contend that the board's jurisdiction under section 759(f) covers only a "federal agency" procurement, which also involves the acquisition or use of the broadly-defined ADPE.

We agree with the government that a plain reading of the statute gives protest jurisdiction to the board only over a procurement of a federal agency, *i.e.*, where a potential contractor with a federal agency is the protestor. The board's authority in subsection 759(f)(1) is to the review of any decision by a *contracting officer* in connection with "any procurement ... which is subject to this section." These procurements are described in subsection 759(a)(1) as the "purchase ... of automatic data processing equipment by Federal agencies." Moreover, a protest filed to contest the award of a contract is defined by the statute as a "written objection ... to a solicitation by a Federal agency." *See* 40 U.S.C. § 759(f)(9)(A).

Because the statute calls for the solicitation or purchase to be that of a *federal agency* and the decision to be reviewed by the board to be that of a *contracting officer,* the plain language of the statute does not support the board's holding that its jurisdiction covers a subcontract procurement by a prime government contractor. The broad definition of ADPE in section 759 does not deal with the type of procurement *transaction* that is subject to review by the board; it deals only with the type of equipment that must be involved in the procurement. Once the transactional requirement is satisfied, the type of equipment that is covered is very broadly defined. The expansive definition of ADPE in section 759(a)(2)(A), however, does not justify ignoring the remaining provisions of the Brooks Act. All of the provisions of section 759 must be harmonized in assess-

ing the board's authority to review ADPE procurements and solicitations.

What is being protested in this case is not the decision of a contracting officer, but the decision of Westinghouse's procurement personnel. It is also not a procurement by a federal agency,[2] but by Westinghouse. While it is true that the type of equipment contracted by Westinghouse meets the definition of ADPE in the statute, the procurement is not, under the plain meaning of the statute, a transaction that is protestable to the board. Absent clear showing of contrary Congressional intent in the legislative history, the plain meaning of the statute is controlling. *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984); *MCI Telecommunications Corp. v. United States*, 878 F.2d 362, 365 (Fed.Cir.1989).

Although the board views the legislative history as supporting its jurisdictional analysis, we are convinced that the legislative history of the Brooks Act is entirely consistent with the plain language of the statute. In the original Brooks Act, Pub.L. No. 89–306, 79 Stat. 1127 (1965), Congress clearly excluded ADPE procurements by government prime contractors from GSA supervision. As introduced, the bill gave GSA authority over ADPE acquisitions "by, or at the expense of, Federal agencies." 111 Cong.Rec. 22826–27 (daily ed. Sept. 2, 1965). When the words "at the expense of" were stricken, the Committee Report explained:

> Government contractors with ADP equipment that would be affected by this legislation, have expressed concern over the possible impact on their operations of extending this Government-wide inventory and acquisition coordinating system to ADP used in the fulfillment of space and defense contracts. For this reason, it is concluded that a more appropriate course of action at this time would be to provide for this management system *limited to inhouse Government ADP*. It is the committee's intention to follow developments closely so that appropriate action

can be recommended should developments indicate that inclusion of contractor equipment, acquired at the expense of the Government, under this coordinated Government inventory and acquisition system is needed for the protection of the taxpayers' interest.

H.R.Rep. No. 802, 89th Cong., 1st Sess. 36–37 (1965) (emphasis added); *see also* S.Rep. No. 938, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S. Code Cong. & Admin. News 3859, 3893–94. In the original Brooks Act, Congress retained only the "Federal agency" language and limited the legislation to in-house government procurement of ADPE. ADPE acquired under subcontract by a government prime contractor was intentionally excluded from Brooks Act coverage.

Similarly, the GSBCA in its original contract dispute resolution authority under the Contract Disputes Act (CDA) could not consider actions initiated by subcontractors. A government contractor's dispute with its subcontractor was by definition specifically excluded from CDA coverage. Congress defined a "contractor" eligible to initiate an action before the board as "a party to a Government contract other than the Government." 41 U.S.C. § 601(4). This language was explained in Senate Report No. 1118:

> The recommendations of the Procurement Commission specifically exclude bringing subcontractors under [the CDA].... By forcing the prime contractor to administer its subcontract network, the Government permits prime contractors and subcontractors at all tiers to use to some extent their familiar commercial procedures in contract award and administration.

S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5235, 5250, 5251. *See United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1548–50 (Fed.Cir.1983).

Nothing in the Brooks Act purports to extend to subcontractors the right to initiate an action before the Board. In fact,

---

**2.** *See Rocky Mountain Trading Co.*, 87–2 BCA ¶ 19,723, 99,870 (GSBCA 1987); *but cf. 3 D Com-* *puter Corp.*, 89–2 BCA ¶ 21,826, 109,804 (GSBCA 1989).

the board's review functions in 40 U.S.C. § 759 are cross-referenced to the CDA for the standard of review, the timing for considering protests, and appeal rights. *See* 40 U.S.C. § 759(f)(1), (4)(B), (6)(A).

The Competition in Contracting Act of 1984 (CICA), Pub.L. No. 98–369, Title VII, 98 Stat. 494, 1175, which gave the board bid protest authority, also does not indicate any change from the past practice that precluded subcontractor actions before the board. Congress instead recognized that the then-existing procedures of the board were suitable for considering federal agency procurements. *See* H.R.Rep. No. 432, Part II, 98th Cong., 2d Sess. 1430–31 (1984) U.S.Code Cong. & Admin.News pp. 697, 1075, 1076. Although Congress originally contemplated a broader definition of parties who could protest—"any person whose direct economic interest would be affected as contractor or *subcontractor*" (emphasis added)—the CICA, as enacted, provided for protest "to a solicitation by a Federal agency" and all references that would have permitted subcontractors to protest were deleted. *See* 40 U.S.C. § 759(f)(9)(A), (B).

The legislative history of the Brooks Act amendments in 1986, which added the ADPE definition on which the board primarily relies for finding jurisdiction, does not reveal any intent by Congress to revise the long-standing statutory provisions that exclude subcontractor procurements from board review. The board relies primarily on the Conference Report statement:

> The importance of the Board's responsibilities continues to grow as the *Federal government* enters into more contracts subject to the Board's protest authority.... It is the intent of Congress that the refinements in the statute reveal that expanded authority has been placed in the Board, whose jurisdiction and functions shall be broadly construed so as to effectuate the purposes underlying the original grant of protest jurisdiction to it.

H.R.Rep. No. 1005, 99th Cong., 2d Sess. 776 (1986) (emphasis added). The board then uses the broad ADPE definition to extend its jurisdiction to parties, *i.e.*, subcontractors, and transactions, *i.e.*, subcontract procurements, that had always expressly been excluded from board jurisdiction by Congress.

Other statements in the Conference Report on which the board relies, however, are most persuasive that, while the definition of ADPE was broadened, only prime contracts procurements continued to be covered transactions subject to review by, and protest to, the board under the Brooks Act, as amended. For example, the Conference Report confirmed that prime contracts are subject to the Brooks Act only if the *agency* acquires ADPE or products or services from its contractor that make significant use of ADPE.

> [A]ll procurements of ADPE by Federal agencies are subject to Section 111 of the Federal Property Act. Similarly, procurements of ADPE under contract with a Federal agency are also subject to the Act if the contract either requires the use of such equipment or requires the performance of a service or the furnishing of a product that is performed or produced making significant use of ADPE.

*Id.* at 777 (footnote omitted).

And again in commenting on the new ADPE definition, the Conference Report states:

> ADP resources of a *contractor* or vendor of goods and services, including the *acquisition,* use, or management *of such resources, is not covered by this section.* Therefore, contractors and vendors are not required under this section to seek authority from GSA before they acquire ADPE goods and services.

*Id.* at 776 (emphasis added). Congress thus emphasized that the ADPE definition would not include subcontract procurements.

We are convinced from this legislative history that the board's reliance on a snippet from the Conference Report is insufficient to indicate that Congress intended, contrary to the plain language of the statute, to extend to the board protest jurisdiction to cover ADPE procurements by prime contractors from their subcontractors.

The history to the contrary is overwhelming.

## IV

■ In its decision, the board held in the alternative that it had jurisdiction because Westinghouse acted as the "agent or conduit" of DOE in the IVDTS procurement. According to the board, DOE (1) approves the decision to procure the IVDTS, (2) is the final selection authority of the IVDTS contractor, (3) takes title to the material of the IVDTS, and (4) pays for the IVDTS systems with government funds. *United Telephone*, 89–3 BCA ¶ 21,916 at 110,273. The board indicated also that DOE viewed the IVDTS as a "Government requirement." *Id.* In its determination of the requirements of an "agency relationship," the board rejected the analysis in the Supreme Court's decision in *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982), and this court's decision in *United States v. Johnson Controls, Inc., supra.*

> The cases construing the term agency for the purpose of defining the limits of federal tax immunity under the constitution, *United States v. New Mexico*, 455 U.S. 720 [102 S.Ct. 1373, 71 L.Ed.2d 580] (1982), or for the purpose of defining the term "contractor" in the Contract Disputes Act of 1978, *United States v. Johnson Controls*, 713 F.2d 1541 (Fed. Cir.1983), are simply not helpful in analyzing the coverage of the Brooks Act.... Given the clear meaning of the definition of ADPE and the legislative history requiring broad construction of this Board's jurisdiction, it is evident that Congress did intend to extend the coverage of the Brooks Act to procurements of ADPE of the type at issue here under M & O contracts.

*United Telephone*, 89–3 BCA ¶ 21,916 at 110,273–74.

Apart from the fact that the legislative history does not mention M & O contracts, the board repeats its error of construing the definition of ADPE in the Brooks Act as a grant of jurisdiction. As noted earlier, there is no question that the ADPE definition is broad and that Congress intended that it be construed broadly. But, the board's jurisdiction is limited to reviewing the decision of a contracting officer in connection with the procurement of ADPE by a Federal agency.

Furthermore, in its alternative holding the board has misconstrued the requirements necessary for a contractor to be an agent of the government. Had the board accepted the teachings of *New Mexico* and *Johnson Controls*, the inadequacy of its four-part, or possibly five-part, test would have been apparent. The board did not cite any precedent for its test for determining an agency relationship and, if applied generally, virtually every federal agency contract governed by cost reimbursement principles would create an agency relationship. Thus, the standard enunciated by the board is in reality no standard at all.

Our decision in *Johnson Controls*, even though it dealt directly with the question of subcontractor privity for purposes of a Contract Disputes Act proceeding, examined the elements of an agency relationship. *See* 713 F.2d at 1551–52. We held that (1) a prime contractor must act as a purchasing agent for the government, (2) the agency relationship between the government and the prime contractor must be established by clear contractual consent, and (3) the contract must state that the government is directly liable for the purchase price. We also noted in *Johnson Controls* that the Supreme Court in *United States v. New Mexico* had enumerated these same factors, as well as others (*e.g.*, title passes directly to the government). *See New Mexico*, 455 U.S. at 742, 102 S.Ct. at 1386.

In Westinghouse's M & O contract, section I–70(b) expressly provides that "[s]ubcontracts shall be in the name of the Contractor, and shall not bind or purport to bind the Government." Moreover, there is nothing in Westinghouse's M & O contract that says Westinghouse is to act as DOE's procurement agent for the IVDTS procurement or for any other procurement. Accordingly, the board erred in determining

that Westinghouse was an "agent or conduit" for DOE.

## V

■ After delineating the board's errors in holding that it had jurisdiction over United's protest of Westinghouse's procurement because of the expansive definition of ADPE in the Brooks Act, as amended, and, alternatively, because Westinghouse acted as the procurement agent for DOE, the government urges this court to hold that the board's finding of jurisdiction was nevertheless proper in this case. It contends that there is a unique relationship between DOE and its M & O contractors which warrants the jurisdictional holding by the board. Specifically, the government cites a number of Comptroller General decisions in which it was held that GAO has protest jurisdiction over procurements by DOE's M & O contractors. The government suggests that the standard enunciated by the Comptroller General should apply in determining the board's jurisdiction over ADPE procurements by DOE's M & O contractors. *See LaCorte ECM, Inc.,* Comp. Gen.Dec. B–231448.2 (31 Aug. 1988), 88–2 CPD ¶ 195; *Afftrex, Ltd.,* Comp.Gen.Dec. B–231033 (12 Aug. 1988), 88–2 CPD ¶ 143; *cf. Ocean Enterprises, Ltd.,* 65 Comp.Gen. 585 (1986).

Following enactment of the CICA, which established the statutory basis for the protest authority of GAO as well as that of the board, *compare* 31 U.S.C. §§ 3551, 3553 (GAO protest jurisdiction) with 40 U.S.C. § 759(f)(1) (GSBCA protest jurisdiction), the Comptroller General construed GAO's jurisdiction in the following manner:

> [o]ur office does not review subcontract awards by Government prime contractors except where the awards are by or for the Government. GAO Bid Protest Regulations, 4 C.F.R. § 21.3(F)(10) (1985). This limitation on our review is derived from the Competition in Contracting Act of 1984, 31 U.S.C.A. § 3551, *et seq.* (West Supp.1985), which limits our bid protest jurisdiction to protests concerning solicitations issued by federal contracting agencies. In the context of subcontractor selections, we interpret the act to authorize our Office to review protests only where, as a result of the contractual relationship between the prime contractor and the government, the subcontract in effect is awarded on behalf of the government. For example, we will consider protests regarding subcontractor selections where they concern subcontracts awarded by prime contractors operating and managing Department of Energy facilities.

*Ocean Enterprises,* 65 Comp.Gen. at 586. The Comptroller proceeded to explain that, in such situations,

> the prime contractor principally provides large-scale management services to the government and, as a result, generally has an ongoing purchasing responsibility. In effect, the prime contractor acts as a middleman or conduit between the government and the sub-contractor and, as a result, the subcontract is said to be "for" the government.

*Id. Accord Rohde & Schwarz–Polard, Inc.—Reconsideration,* Comp.Gen.Dec. B–21908.2 (8 July 1985), 85–2 CPD ¶ 33, pp. 2–3; *Optimum Systems, Inc.,* 54 Comp. Gen. 767 (1975) (distinguishing situation from procurement agent).

The government says that, based upon the Comptroller General's analysis, the board "could properly assert jurisdiction, not on the basis of a procurement agency, but upon the narrow basis that Westinghouse was [DOE's] M & O contractor and was specifically charged with operating an up-to-date communications system for [DOE]." Brief of United States at 31–32. The government qualifies that jurisdictional assertion even further in an accompanying footnote by stating, *inter alia:* "This is not to say that GAO or GSBCA should always have jurisdiction over M & O procurements. There may well be situations where jurisdiction does not lie." *Id.* at 32 n. 21.

It does not appear that the government made this argument before the board; it contended only that the board lacked jurisdiction. Moreover, the government's belated jurisdictional standard is both unsup-

ported by the statute and impermissibly vague. We are not convinced by the government's *post hoc* attempt to justify the board's jurisdictional decision. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962); *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

The GAO practice relied on by the government predates the GAO's statutory grant of protest jurisdiction. Prior to CICA, GAO considered protests based on its general claims settlement responsibility under the Budget and Accounting Act of 1921. 31 U.S.C. §§ 71, 74, 82d (1976) (reconfigured in 1982 as 31 U.S.C. §§ 3526, 3529, 3532, 3702). After enactment of the CICA, GAO reaffirmed its practice of considering subcontractor protests under its historic approach of looking at procurements "by and for" the government. *See Ocean Enterprises*, 65 Comp.Gen. at 586; *Optimum Sys., Inc.*, 54 Comp.Gen. at 772–74; 4 C.F.R. § 21.1 (1985). Its practice was to take jurisdiction when the prime contractor is "basically acting as the government's agent." *ToxCo, Inc.*, Comp. Gen.Dec. B–235562 (23 Aug. 1989), 89–2 CPD ¶ 170, p. 3.

GAO therefore considers that it has jurisdiction, notwithstanding that its protest jurisdiction under CICA is couched in terms of solicitation and contract awards "by a Federal agency," 31 U.S.C. § 3551 (*see ante* p. 630, discussing CICA's grant of protest jurisdiction to GSBCA), and notwithstanding the settled tests for determining "agency" status in a procurement context (*see ante* p. 630, discussing the tests for a "procuring agent"). Indeed, in GAO's first post–CICA decision taking jurisdiction of an M & O contract procurement, GAO cited its pre–CICA practice. *Ocean Enterprises*, 65 Comp.Gen. at 586. Moreover, GAO has not restricted itself solely to the review of the subcontracts of DOE's M & O prime contractors, but has entertained review of the subcontracts of other prime contractors. *See ToxCo*, 89–2 CPD ¶ 170 at pp. 2–3.

That GAO may assert jurisdiction over a subcontract procurement as the result of the protest by a subcontractor does not persuade us that the board has similar authority. GAO applies the nonstatutory test of whether the procurement is "by or for" the government. This test is not found in the CICA or in the Brooks Act, including the 1986 amendments, and does not rely on accepted procurement agency law. Accordingly, we reject the argument of the government, first raised on appeal, that the board's jurisdiction should be equated with the protest jurisdiction that GAO has assumed for itself.

In the appeal of US West (No. 89–1662), we therefore vacate the decision of the board for lack of jurisdiction.

## VI

The government contends in its cross-appeal that the board is without statutory authority to direct Westinghouse and DOE to award the IVDTS contract to United. Our determination that the board does not have jurisdiction to hear United's protest renders this issue moot. The government's cross-appeal (No. 90–1052) is therefore moot.

### COSTS

Each party shall bear its own costs.

VACATED.