MCRAE INDUSTRIES, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

and

Belleville Shoe Manufacturing Company, Defendant–Intervenor,

and

Wolverine World Wide, Inc., Defendant–Intervenor.

No. 01–460C.

United States Court of Federal Claims.

Aug. 14, 2002.

---

Alan M. Grayson, McLean, VA, for plaintiff.

Thomas B. Fatouros, Washington, DC, with whom was Assistant Attorney General Robert D. McCalum, Jr., for defendant. Gale Furman, Defense Logistics Agency, Philadelphia, PA, of counsel.

Thomas C. Wheeler, Washington, DC, for Belleville Shoe Manufacturing Company, defendant-intervenor.

Hilary S. Cairnie, Washington, DC, for Wolverine World Wide, Inc., defendant-intervenor.

## OPINION

MEROW, Senior Judge.

This post-award bid protest is before the court on plaintiff's motion for injunctive relief, defendant's and intervenors' motion to dismiss, and defendant's motion for a protective order. Plaintiff McRae Industries, Inc. ("McRae") seeks to set aside the United States Defense Logistic Agency, Defense Supply Center–Philadelphia's ("DSCP") decision to award a contract for military combat boots to intervenors Belleville Shoe Manufacturing Co. ("Belleville") and Wolverine World Wide, Inc. ("Wolverine"). Plaintiff contends that the award was improper because DSCP failed to evaluate offerors' bids in accordance with the requirements listed in the solicitation. Defendant and intervenors argue that plaintiff lacks standing to challenge the procurement because it did not submit a bid, or, in the alternative, that DSCP's award decision was reasonable. For the reasons stated below, plaintiff's motion for injunctive relief is denied and defendant's and intervenors' motion to dismiss is granted.

## BACKGROUND

On September 27, 2000, DSCP issued Request for Proposals No. SPO100–00–R–0050 (the "RFP" or "solicitation") seeking offers to supply combat boots to the military. The RFP described the required boot as follows: "Boot, intermediate cold/wet with removable insulated booties, shall be manufactured in accordance with purchase description CRFD/PD 99–09. . ." Administrative Record ("AR") 90. The solicitation stated that half of the acquisition would be set aside for a small business with the remaining half unrestricted. The solicitation requested offers for a base period of one year with four option years. In the first year, the RFP provided that DSCP would order a minimum of 33,033 pairs of boots and a maximum of 68,820 pairs.

The RFP indicated that awards would be made on a "best value" basis, taking into account several technical evaluation factors as well as price. In order to qualify for the competitive range, offerors were required to submit several product demonstration model ("PDM" or "sample") boots for both "midsole component" and "end-item" testing. RFP Section M stated that "FAILURE TO PASS ALL DESIGNATED END ITEM TESTS WILL CAUSE IMMEDIATE REJECTION OF THE OFFER AND ELIMINATE OF-

FEROR FROM FURTHER CONSIDER-ATION." (AR 184) (emphasis in original).

At issue here are two of the end-item tests, the Boot Leakage Test ("Leakage Test") and the Adhesion–at–Toe Test ("Adhesion Test"). The Leakage Test, which DSCP had not used before, required a boot to be flexed 100,000 times while dry, then immersed in water and flexed another 100,-000 times. AR 33 n. 7; 204. The Adhesion Test determined the force required to separate the upper part of the boot from the sole at the toe. AR 241–2. Although McRae had been the low-price offeror in many previous DSCP boot procurements, McRae elected not to submit a proposal because of the Leakage Test requirement. (Plaintiffs' Brief at 4). DSCP received proposals and sample boots from several offerors.

DSCP subsequently determined that it could not perform either the Leakage or Adhesion tests. The machine required for the Leakage Test did not work properly, and DSCP discovered it no longer had the equipment necessary to perform the Adhesion Test. AR 207. Faced with these difficulties, DSCP decided to eliminate both tests from the evaluation criteria. *Id.* DSCP believed that the Leakage Test was not necessary because all offerors proposed using Gore–Tex, a proven water-proof membrane, and would therefore meet field performance requirements. *Id.* The Adhesion Test could be eliminated because the PDM boots had already passed the more strenuous Bond Strength Test. *Id.* After technical scoring and evaluation were completed, the agency awarded the small business set aside contract to Belleville and the general award contract to Wolverine on April 12, 2001.

McRae subsequently learned that DSCP had not performed the Leakage or Adhesion tests on any of the PDM boots. On May 29, 2001, McRae filed a protest of both awards with the General Accounting Office ("GAO"). GAO denied this protest on July 20, 2001. McRae filed a Complaint for Declaratory and Injunctive Relief in this Court on August 7, 2001. The complaint alleges that: 1) DSCP violated applicable laws and regulations by failing to evaluate proposals using procedures set forth in the RFP; 2) DSCP violat-ed 10 U.S.C. § 2305(a)(1)(B)(ii) (1994) and FAR 11.002(a)(1)(ii) by requiring offerors' sample boots to pass the Leakage and Adhesion Tests; and 3) the awards were arbitrary, capricious, an abuse of discretion and contrary to law. McRae filed an application for a preliminary injunction on August 15, 2001. Defendant and Intervenor's oppose this motion and have moved to dismiss for lack of subject matter jurisdiction.

## DISCUSSION

In *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), the Supreme Court stated that determining whether subject matter jurisdiction exists is an "inflexible" threshold matter. *Id.* at 94–95, 118 S.Ct. 1003. Accordingly, defendant's and intervenors' motion to dismiss must be addressed first.

### A. Defendant's and Intervenors' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to RCFC 12(b)(1)

(1) Standard of Review

The burden of establishing the court's subject matter jurisdiction rests with the party seeking to invoke it. *See Myers Investigative and Sec. Serv., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir.2002). When ruling on a motion to dismiss, the Court must accept all well-pled factual allegations as true and construe the facts in the light most favorable to the non-movant. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991). However, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. La-Hue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir.1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim."). The court should not grant a motion to dismiss, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### (2) McRae's Status as an Interested Party

This court's jurisdiction to entertain objections to a contract after the contract has been awarded is set forth in 28 U.S.C. § 1491(b)(1), which provides: "[T]he Unite[d] States Court of Federal Claims...shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract..." In this case, both defendant and intervenors contend that plaintiff does not qualify as an "interested party" and therefore has no standing to bring this suit.

In *Am. Fed'n of Gov't Employees v. United States,* 258 F.3d 1294 (Fed.Cir.2001), the Federal Circuit resolved any ambiguity in the term "interested party" by construing that term in accordance with the Competition in Contracting Act, 31 U.S.C. § 3551(2) (1994 & Supp.1999) ("CICA"). The Court held that, "standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *AFGE,* 258 F.3d at 1302. As McRae did not submit a bid for this contract and is therefore not an "actual bidder," plaintiff can establish jurisdiction only if it can show that it is a "prospective bidder."

*MCI Telecomm. Corp. v. United States,* 878 F.2d 362 (Fed.Cir.1989), presented the nearly identical question of "whether a would-be protestor wishing to bring about a resolicitation on which it says it intends to bid has the necessary status, even though it failed to either bid in response to the original solicitation or to protest before the close of the proposal period..." 878 F.2d at 364.[1] In *MCI,* as here, plaintiff charged that the government waived mandatory contract requirements and that a resolicitation should occur. The Court reasoned that the use of the word

"prospective" indicated that, "in order to be eligible to protest, one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation...the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." *MCI,* 878 F.2d at 365. *See also Fed. Data Corp. v. United States,* 911 F.2d 699, 704 (Fed.Cir. 1990); *United States v. IBM,* 892 F.2d 1006, 1010–11 (Fed.Cir.1989); *Ryan Co. v. United States,* 43 Fed.Cl. 646, 657 (1999). Therefore, because McRae decided not to submit a bid for this contract or protest the RFP requirements prior to the close of bidding, McRae is not a "prospective bidder" and does not have standing to challenge the award.

McRae's attempts to evade this binding precedent are unavailing. McRae relies upon the GAO decision, ultimately denying the protest, which found that McRae was an interested party. *See McRae Indus., Inc.,* B— 287609.2, 2001 WL 826734 (July 20, 2001). The GAO decision stated that:

> Inasmuch as the appropriate relief, if our Office were to sustain the protest, would be for the protester and other offerors to be given an opportunity to compete based on a revised RFP, we consider the protester to have a sufficiently direct economic interest in the outcome to be deemed an interested party.

*Id.* at 2. Under the GAO's circular approach, whether a plaintiff has standing to protest is determined by theorizing the relief to which the plaintiff would be entitled if the protest were successful. However, standing is a threshold issue which must be resolved before a protestor can argue the merits of whether it is entitled to relief. *See Steel,* 523 U.S. at 94–95, 118 S.Ct. 1003. Further, the GAO approach is contrary to the plain language of § 1491(b)(1), which requires plaintiff to be an "actual or prospective bidder" *and* have the requisite "direct economic interest." *See Fed. Data. Corp.,* 911 F.2d at 703. The GAO decision appears to only ad-

---

1. *MCI* dealt with the term "interested party" as used in the Brooks Act, 40 U.S.C. § 759(f)(9)(B) (repealed 1996). The Court noted Congress's use

of the identical term in the CICA. *See MCI,* 878 F.2d at 365. *See also Alaska Cent. Express, Inc. v. United States,* 50 Fed.Cl. 510, 515 (2001).

dress the latter requirement. Under the precedential analysis used in *MCI*, McRae does not have standing because it is not an "actual or prospective bidder," although it may have the necessary "direct economic interest."

McRae is unsuccessful in its attempts to distinguish this case from *MCI*. In an effort to do so, McRae relies upon *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed.Cir.2001) and *ATA Def. Indus., Inc. v. United States*, 38 Fed.Cl. 489 (1997). Neither case supports McRae's position, *Impresa* is inapposite here because in that case the protestor submitted a bid; the language relied upon by McRae concerns only whether the protestor "had an 'economic interest' in the outcome." 238 F.3d at 1334. In *ATA*, the Court held that a protestor that did not bid or protest prior to the close of the proposal period nevertheless had standing to protest after the contract was awarded. 38 Fed.Cl. at 494–96. On the surface, this holding appears to support McRae's position and plaintiff relies heavily upon it. However, *ATA* actually undermines McRae's argument. In *ATA*, prior to the contract award, the plaintiff expressed its intent to bid to defendant and complained that defendant's intention to limit the award to suppliers with existing Federal Supply Schedule agreements (which plaintiff did not have) was improper. Plaintiff was ultimately excluded from bidding on the contract. The *ATA* Court expressly distinguished the factual situation before it from *MCI* (and therefore McRae):

[T]he *MCI* court indicated no more than if a party had an opportunity to bid on a contract but did not bid within the allowed time frame, then that party cannot be considered an "actual or prospective bidder." The court did not have before it, much less address, the instant situation where the contracting officer precluded a party from submitting a bid allegedly in violation of controlling statutes and regulations.

*Id.* at 496–97. Here, no action by the government precluded McRae from submitting a bid. Rather, McRae had an opportunity to bid but chose not to do so. Therefore, McRae lacks standing under § 1491(b)(1).

Because McRae lacks standing to challenge the award, it is unnecessary to reach the parties' remaining contentions. Even if McRae were found to have standing, the GAO opinion adequately disposed of plaintiff's arguments on the merits.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's and Intervenors' Motion to Dismiss is **GRANTED**. The Clerk is directed to enter judgment for the Defendant. No costs to be assessed.