.

# United States Court of Appeals
# for the Federal Circuit

———————————

**DIGITALIS EDUCATION SOLUTIONS, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

**and**

**MORRIS & LEE, (DOING BUSINESS AS SCIENCE FIRST),**
*Defendant-Appellee.*

———————————

2011-5079

———————————

Appeal from the United States Court of Federal Claims in case no. 10-CV-855, Judge Eric G. Bruggink.

———————————

Decided: January 4, 2012

———————————

CHRISTOPHER H. HOWARD, Schwabe, Williamson & Wyatt, P.C., of Seattle, Washington, argued for plaintiff-appellant. With him on the brief was AVERIL BUDGE ROTHROCK.

WILLIAM P. RAYEL, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-

appellee, United States. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK MANHARDT, Assistant Director.

JAMES E. KRAUSE, James E. Krause, P.A., of Jacksonville, Florida, for defendant-appellee, Morris & Lee, (doing business as Science First).

---

Before LOURIE, BRYSON, and MOORE, *Circuit Judges*.

MOORE, *Circuit Judge*.

Digitalis Education Solutions, Inc. (Digitalis) appeals the Court of Federal Claims's dismissal of its post-award protest of a sole-source procurement. Because Digitalis is not an actual or prospective bidder, and because it lacks the requisite direct economic interest, we *affirm* the Court of Federal Claims's dismissal for lack of standing.

## BACKGROUND

Digitalis makes and sells digital planetariums used to teach astronomy. *Digitalis Educ. Solutions, Inc. v. United States*, 97 Fed. Cl. 89, 90 (2011). The Department of Defense uses digital planetariums in schools overseen by the Department of Defense Educational Activity (Department). *Id.* For years, Department schools have used planetariums called "STARLAB" developed by Morris & Lee (doing business as Science First) (Science First). *Id.* In 2009, the Department conducted an unadvertised sole-source procurement of analog STARLAB planetariums from Science First. As part of its justification for the sole-source to Science First, the Department noted that its curricula were geared toward the product. In 2010, the Department wished to procure more planetariums and chose to purchase digital, rather than analog systems. *Id.* This procurement is the focus of the litigation.

The Department began the process of procuring the planetariums at issue in this case in September 2010. Because its funding expired at the end of the fiscal year, the Department wished to expedite the procurement. Before posting any notice of its intention to sole-source the contract, the Department communicated with Science First to inquire about possible terms. *Id.* On Friday, September 17, 2010, the Department posted on *www.fedbizopps.gov* (fedbizopps) a notice of intent to award a sole-source contract to Science First.[1] *Id.* at 90-91. The notice stated that if any party challenged the sole-source contract to Science First, then it should file a statement no later than Wednesday, September 22, 2010, detailing its capability to fulfill the order. In parallel with this process, the Department prepared and approved a Justification and Authorization (J&A) as required for a sole-source procurement. Part of the J&A stated that "[c]urriculum standards and specific lessons for the STARLAB components are already in place and there are teacher trainers for this product." *Id.* at 91.

During the period for response, another producer of planetariums, Sky Skan, submitted a statement of capability in response to the notice of the sole-source procurement. *Id.* Upon receiving Sky Skan's statement, the Department sought to refine the requirement by asking Science First to provide additional specifications to add to the notice. Science First obliged and provided an extensive list of hardware, software, accessories, warranties and other information specific to STARLAB. *Id.* at 91-92. The Department added language to the notice of intent to sole-source to state "[The Department] has standardized

---

[1] www.fedbizopps.gov is "the Governmentwide point of entry ('GPE') where government contracting opportunities are made publicly available." Government Br. 6 (citing 48 C.F.R. §§ 5.003, 5.102(a)(1), 5.201(d)).

curricula developed exclusively for the STARLAB portable planetarium. Curriculum standards and specific [lessons] for the STARLAB components are [already] in place." *Id.* at 92. The Department responded to Sky Skan's submission by pointing it to this additional language. *Id.*

On September 25, the Department awarded the contract to Science First for fifty digital planetariums. *Id.* On October 11, after learning of the contract, Digitalis contacted Congressman Norm Dicks to object to the way it was awarded. The Congressman forwarded the complaint to the Department. Six weeks later, the Department responded to the Congressman stating that because Digitalis did not file a capability statement or otherwise protest the sole-source award, the Department would not consider Digitalis's objections. *Id.* On December 2, Digitalis objected for the first time directly to the Department and on December 6, it filed the instant case at the Court of Federal Claims. *Id.*

The government (along with Intervenor Science First) filed a motion to dismiss for lack of standing and a motion for judgment on the administrative record. Digitalis filed a cross motion for judgment on the administrative record. *Id.* The Court of Federal Claims held that Digitalis could not demonstrate prejudice, a prerequisite for standing, because it did not have a substantial chance of winning the contract. *Id.* at 93. Because Digitalis failed to review fedbizopps and submit a statement of capability during the prescribed period, the court explained that "[e]ven if the procurement had proceeded flawlessly, Digitalis's chances to get the contract would not have been any different." *Id.* The court reasoned that a longer response time would have led to the same result because Digitalis did not check fedbizopps for weeks. *Id.* The Court of Federal Claims also denied Digitalis's motion for judgment on the administrative record.

Digitalis appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review determinations of standing *de novo*. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1379 (Fed. Cir. 2009). Any underlying fact findings are reviewed for clear error. *Id.* We review a denial of judgment on the administrative record without deference, meaning that we apply the "arbitrary and capricious" standard. *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).

Only an "interested party" has standing to challenge a contract award. *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. *Id.* Thus, a party must show that it is 1) an actual or prospective bidder and 2) that it has a direct economic interest. "[I]n order to be eligible to protest, one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation." *MCI Telecomms. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989). To prove a direct economic interest, a party must show that it had a "substantial chance" of winning the contract. *Rex Serv.*, 448 F.3d at 1308.

Digitalis argues that the Court of Federal Claims should have first determined whether the Department was required to conduct a full competition for the contract rather than a sole-source notice. Then, if we find that the Department should have conducted a full competition, Digitalis argues that it is clear that it would have had a substantial chance of prevailing.

Digitalis also argues that its failure to submit a statement of capability is "irrelevant" to the analysis. It contends that the filing of a capability statement would have been futile based on the Department's response to Sky Skan that basically required it to emulate Science First. Further, Digitalis argues that the period for submitting statements of capability was unreasonably short.

The government responds that Digitalis is not an "interested party" under 28 U.S.C. § 1491(b)(1) because it fails both prongs of the relevant test: it is not an actual or prospective bidder and it does not possess a direct economic interest. The government argues that Digitalis was not an "actual or prospective bidder" because it failed to submit a capability statement. It analogizes to *Rex Service* where we held that if a party does not bid during the bid period, it does not have standing regardless of any illegalities by the government in the bid process. Government Br. 15 (citing *Rex Serv.*, 448 F.3d at 1308). The government contends that five days is a reasonable amount of time for a notice of intent to sole-source. It argues that the Court of Federal Claims previously found a six-day window reasonable and, regardless, Digitalis would have needed a twenty-three day window in order to see the notice.

The government argues that Digitalis does not have a "direct economic interest" for similar reasons. It asserts that it is not enough for a party to simply show that it would have competed in a competition had there been one. It notes that even if the Department had held a flawless sole-source procurement with a notification period of over twenty days, Digitalis still would have been unable to file a statement of capability because it would not have known of the contract.

We agree with the government that the rule of *Rex Service* controls the result of this case. In *Rex Service*, the government issued a request for proposals and received bids from contractors. One day before the end of the period to submit proposals, Rex Service filed an objection to the request for proposal. *Rex Serv.*, 448 F.3d at 1307. It argued that the government's violations of certain statutes and regulations prevented it from filing a proposal or bid. *Id.*

We held that Rex Service did not satisfy either prong of the test for standing because it failed to submit a proposal during the prescribed time. *Id.* at 1307-08. We noted that "in order to be eligible to protest, one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation" and that the opportunity to become a prospective bidder ends when the proposal period ends. *Id.* at 1308 (quoting *MCI*, 878 F.2d at 365). We further held that Rex Service had no direct economic interest because it had no substantial chance to be awarded the contract due to its failure to submit a bid. *Id.* at 1308.

We see no reason to limit this rule to competitive procurements. Indeed, the Court of Federal Claims has already extended it to sole-source contracts under similar facts. *See Infrastructure Def. Techs. v. United States*, 81 Fed. Cl. 375 (2008). In a sole-source award such as this one, the notice of intent issued by the government is analogous to a request for a proposal. Interested parties are invited to submit statements of capability in order to convince the government that it should hold a full competition for the contract rather than sole-source the contract to the proposed contractor. We therefore hold that in order to be an actual or prospective bidder, a party must submit a statement of capability during the prescribed period. Failure to do so also means that a party does not

have the requisite direct economic interest because it cannot have a "substantial chance" of convincing the government to hold a formal competition and subsequently bid on the contract. *Rex Serv.*, 448 F.3d at 1308.

This holding should not be read, however, as foreclosing challenges to the reasonableness of the procurement time period. Digitalis attempts to do this by challenging the five-day period. Digitalis argues that the selected time period is unreasonably short and that therefore Digitalis should be permitted to challenge the procurement despite not having filed a statement of capability within the time period. The government seemed to argue that a party who fails to submit a statement of capability during the prescribed period may only object to the reasonableness of the time period if it is so short that it was impossible for the contractor to bid. We do not agree. Determining whether the time period is reasonable is necessarily a fact intensive analysis. In the context of commercial item procurement, regulations require that the government "establish a solicitation response time that will afford potential offerors a reasonable opportunity to respond . . . ." 48 C.F.R. § 5.203(b). Because commercial items are often readily available to the public, a brief time period for soliciting responses may be reasonable. *See, e.g., Cal. Indus. Facilities Res., Inc. v. United States*, 80 Fed. Cl. 633, 635-36 (2008) (holding that a period of six days was reasonable in a solicitation for commercial items). Contrary to the government's argument, the proper inquiry is not whether it is possible for a party to submit a statement of capability during the time period, but whether it is reasonable to expect contractors to see a notice and respond.

As the Court of Federal Claims noted, "the administrative record lends credence to a number of Digitalis's allegations of hasty and shoddy contracting." *Digitalis*, 97

Fed. Cl. at 95. Yet at least one potential offeror, Sky Skan, saw the notice and filed a statement of capability, which suggests that the time period was not unreasonably short. We do not need to decide whether the posting time was unreasonable, however, because Digitalis did not check fedbizopps or otherwise notice the sole-source award to Science First for more than twenty days. As the Court of Federal Claims held, a twenty-day period would have certainly been reasonable and Digitalis would still have failed to file a statement of capability. Because Digitalis did not even discover the procurement posting for more than twenty days, we conclude it was not an interested party. We cannot analyze standing in a vacuum, but rather must take into account the circumstances of the litigant. To conclude otherwise would open the procurement process up to an infinite number of challenges even long after the procurement process ended. We do not reach the merits of whether five days is a reasonable time period because we conclude that Digitalis was not an interested party with standing to challenge the reasonableness of the time period.

We have considered Digitalis's other arguments regarding standing and find them unpersuasive. Because the Court of Federal Claims correctly determined that Digitalis does not have standing to protest this sole-source contract award, we need not reach the additional issues in this case.

**AFFIRMED**