# United States Court of Appeals for the Federal Circuit

---

**CACI, INC.-FEDERAL,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, GENERAL DYNAMICS MISSION SYSTEMS, INC., SIERRA NEVADA CORPORATION,**
*Defendants-Appellees*

---

2022-1488

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01823-ZNS, Judge Zachary N. Somers.

---

Decided: May 10, 2023

---

SHANNEN WAYNE COFFIN, Steptoe & Johnson LLP, Washington, DC, argued for plaintiff-appellant. Also represented by MARK CHRISTOPHER SAVIGNAC; GARY CAMPBELL, MILES MCCANN, Perkins Coie LLP, Washington, DC.

DANIEL FALKNOR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; MICHAEL RAY TREGLE, JR., Contract Litigation and Intellectual Property, United

States Army Legal Service Agency, Fort Belvoir, VA.

MATTHEW S. HELLMAN, Jenner & Block LLP, Washington, DC, argued for defendant-appellee General Dynamics Mission Systems, Inc. Also represented by NOAH B. BLEICHER, NATHANIEL EDWARD CASTELLANO, CARLA JOANNE WEISS.

SHAUN C. KENNEDY, Holland & Hart LLP, Denver, CO, for defendant-appellee Sierra Nevada Corporation. Also represented by CHRISTOPHER M. JACKSON, RYAN LUNDQUIST, THOMAS ANDREW MORALES.

————————————

Before DYK, REYNA, and STARK, *Circuit Judges.*

DYK, *Circuit Judge.*

Appellant CACI, Inc. ("CACI") appeals the Court of Federal Claims ("Claims Court") dismissal of its bid protest. The Claims Court held that CACI lacked standing but nonetheless alternatively concluded that CACI's bid suffered a fatal technical deficiency. We hold that the Claims Court erred in treating the statutory standing issue as jurisdictional. We affirm on the merits.

BACKGROUND

I.    CACI's Proposal and the Army's Evaluation

The Army issued a solicitation for a Next Generation Load Device Medium ("NGLD-M" or "device") to encrypt and decrypt sensitive information on the battlefield. In its solicitation, the Army stated that "[i]n order to be eligible for [the] award Offerors must . . . [r]ecieve a minimum of acceptable rating in each Technical Subfactor." J.A. 1588. The technical subfactors were "Hardware and Application Programming Interface (API) Integration/Description Approach, User Application Software (UAS) Approach/Key Management Interface (KMI) Implementation,

Management, and Production." J.A. 1588. The Army evaluated each technical subfactor for strengths, weaknesses, significant weaknesses, and deficiencies. A deficiency "is a material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level." J.A. 1594. One or more deficiencies would lead to an unacceptable rating, meaning that the "[p]roposal is unawardable." J.A. 1594.

Five offerors submitted proposals. CACI submitted an initial proposal that was given a Technical/Risk Rating of unacceptable because it failed to provide for two-factor authentication for all modes of operation as required by the solicitation. Despite this deficiency, CACI's proposal was included in the competitive range, and CACI was allowed to submit a final proposal because "only minor revisions to [CACI's] proposal will be required to rectify this issue and a complete rewrite will not be necessary." J.A. 5398.

Appellees Sierra Nevada Corporation ("SNC") and General Dynamics Mission Systems ("GDMS") were also within the competitive range. CACI, SNC, and GDMS submitted final proposals. CACI for the first time included two-factor authentication in its bid for all modes of operation. CACI proposed using a username and password for the first method of authentication and a dongle that could be inserted into the device's USB port for the second method of authentication.

The Army assigned three deficiencies to CACI's proposal related to its two-factor authentication proposal. First, the Army was unable to confirm that the device with the dongle inserted would meet the size requirement because CACI did not provide the size measurement of the dongle used for two-factor authentication. The Army also assigned two other deficiencies because it determined that CACI's proposal required that the two-factor authentication dongle remain inserted into the device's only USB

port, meaning the USB port could not be used to distribute and receive data as required by the solicitation. The Army assigned one deficiency for failure to meet data distribution requirements and another for failing to meet the data receiving requirements. Because of these three deficiencies, CACI was ineligible for the award. The Army awarded the contract to SNC and GDMS.

## II.      Proceedings at the Claims Court

CACI filed a bid protest at the Claims Court challenging the technical deficiencies assigned to its proposal. SNC and GDMS intervened as defendants. SNC and the government moved to dismiss CACI's complaint for lack of standing under a new theory not raised before or addressed by the contracting officer, namely that CACI had an organizational conflict of interest ("OCI") that could not be waived or mitigated, which made CACI ineligible for the award even if it were to prevail on its claim regarding the technical deficiencies. Because of the OCI, SNC and the government argued that CACI was not an interested party and lacked standing, which they characterized as a jurisdictional issue.

OCIs are governed by the Federal Acquisitions Regulations ("FAR"), found at 48 C.F.R. Chapter 1. The FAR prescribes "limitations on contracting as the means of avoiding, neutralizing, or mitigating [OCIs]" with the goals of "[p]reventing the existence of conflicting roles that might bias a contractor's judgment" and "[p]reventing unfair competitive advantage." FAR § 9.505. Under the FAR, contracting officers are to "[i]dentify and evaluate potential [OCIs] as early in the acquisition process as possible." FAR § 9.504(a)(1). An OCI can result from work performed under a prior contract. The FAR provides, in relevant part, that "[a] contractor that provides systems engineering and technical direction for a system [under a prior contract] . . . shall not . . . [b]e awarded a contract to supply the system or any of its major components." FAR § 9.505-1. In

general, an OCI can be waived by an agency head or designee, FAR § 9.503, an OCI can be mitigated, *see* FAR § 9.505, and contractual restrictions may sunset under the terms of the prior contract, FAR § 9.507-2.[1]

Here, as part of its proposal, CACI submitted an Organizational and Consultant Conflict of Interest statement. CACI's statement acknowledged that a former CACI employee under a prior contract worked with the Army to prepare one of the documents included in the solicitation but contended that the employee "provided only logistical and administrative support" and "did not participate in the substantive aspects of the [document] approval process." J.A. 2318. Thus, CACI concluded it did not have an OCI with respect to the current contract. J.A. 2318. Because the employee did not provide "engineering and technical direction" there was no conflict. The contracting officer at the time of the proposal made no determination or suggestion that there was an OCI.

For the first time at the Claims Court, SNC and the government argued that the work of CACI's former employee constituted an OCI because the work was "systems engineering and technical assistance" ("SETA") under FAR § 9.505-1. Because CACI had an OCI, it did not have a substantial chance of securing the award; it was not an interested party and thus lacked standing. In support of its motion, the government submitted a declaration from the contracting officer for the solicitation. The contracting officer stated that, "[a]t the request of counsel for the

---

[1]    CACI asks us to interpret FAR § 9.507-2 and hold that once a sunset provision contained in a prior contract in accordance with that regulation becomes operable then a bidder no longer has a disqualifying OCI stemming from that contract, notwithstanding the arguable applicability of FAR § 9.505-1. Consistent with the analysis below, we decline to decide this issue.

Government," she reviewed CACI's OCI statement and found that "CACI would not have been eligible for [an] award due to an unmitigable OCI." J.A. 59. The contracting officer declined to request a waiver from the agency head at the time she prepared her declaration because she "ha[d] no information before [her] that would lead [her] to believe that it was in the Government's best interest to waive any provision of FAR Sub Part 9.5 in this acquisition." J.A. 60–61. The contracting officer also found that CACI had an OCI that could not be mitigated. The contracting officer's declaration did not address whether the restriction resulting from the earlier contract had expired, i.e., sunsetted.

In its answering brief, CACI argued that the OCI should not be determined in a de novo review by the Claims Court because the contracting officer's declaration failed to follow the procedure set forth by the FAR, and, in any event, that the work done by its prior employee was not SETA work, and that any potential OCI had been sunsetted.

The Claims Court conducted its own analysis of the record evidence, finding that CACI's OCI statement and the technical documents in the solicitation provided prima facie evidence that CACI had performed SETA work. The Claims Court did not rely upon the contracting officer's declaration. Because "[t]he FAR prohibits a [systems engineering and technical direction] contractor, as either a prime contractor or a subcontractor, from supplying any of the system's major components," J.A. 9 (alterations in original) (citations omitted), and because CACI's prior work was related to the same system, CACI had an OCI. Since CACI did not provide any evidence to rebut this prima facie showing, the Claims Court concluded that CACI did not have standing because the OCI would have prevented CACI from being eligible for the award. In other words, CACI did not show that it had a "substantial chance it would have received the contract award but for the alleged

error [regarding the technical deficiencies] in the procurement process." J.A. 9 (internal quotation marks and emphasis omitted) (quoting *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)).

The Claims Court apparently held that the OCI here was not eliminated by waiver, mitigation, or sunset provisions, because the FAR provides that

> [a] contractor that provides systems engineering and technical direction for a system but does not have overall contractual responsibility for its development, its integration, assembly, and checkout, or its production *shall not* – (1) be awarded a contract to supply the system or any of its major components or (2) be a subcontractor or consultant to a supplier of the system or any of its major components.

J.A. 9 (emphasis and alteration in original) (quoting FAR § 9.505-1(a)).

Alternatively, the Claims Court found that, even if CACI had standing, defendants would nevertheless be entitled to judgment on the administrative record. In this respect, the Claims Court considered each of the challenged technical deficiencies and found that the Army acted reasonably in its assessment of CACI's proposal.

The Claims Count dismissed CACI's complaint for lack of jurisdiction (lack of standing). CACI appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I.   The Claims Court's OCI Decision

Under the Tucker Act, the Claims Court has jurisdiction over actions "by an interested party objecting to . . . the award of a contract [by a federal agency.]" 28 U.S.C. § 1491(b)(1). We have interpreted the statutory language "interested party" to be an "actual or prospective bidder[] or offeror[] whose direct economic interest would be

affected by the award of the contract or by failure to award the contract." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (emphasis and citation omitted). "To prove a direct economic interest, a party must show that it had a 'substantial chance' of winning the contract." *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012) (quoting *Rex Serv.*, 448 F.3d at 1308).

The standing issue here presents a question of statutory standing rather than Article III standing, *Acetris Health, LLC v. United States*, 949 F.3d 719, 727 (Fed. Cir. 2020) (characterizing the "interested party" inquiry as "statutory standing"), there being no contention that CACI lacks Article III standing. Although the Supreme Court had "on occasion . . . treated [statutory standing] as effectively jurisdictional," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 & n.2 (1998)), in *Lexmark*, the Supreme Court held that statutory standing, occasionally referred to as the zone-of-interests requirement, is not jurisdictional. *Id.* Rather, it is "an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127.

Thus, as we have confirmed, "the Supreme Court has . . . clarified that so-called 'statutory standing' defects do not implicate a court's subject-matter jurisdiction." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) (citing *Lexmark*, 572 U.S. at 128 n.4); *see also Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1072 n.2 (Fed. Cir. 2022). This is true even when the cause of action relies on a waiver of sovereign immunity. *See Wilkins v. United States*, 143 S. Ct. 870, 879 (2023); *Walby v. United* States, 957 F.3d 1295, 1300 (Fed. Cir. 2020) (citing *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015)). Our prior caselaw treating the interested

party issue as a jurisdictional issue, *see, e.g.*, *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing *Steel Co*, 523 U.S. at 102–04), is no longer good law in this respect. The Claims Court here erred in treating the issue of statutory standing as jurisdictional.

We now turn to the question of whether the Claims Court properly considered statutory standing de novo where the issue had not been addressed initially by the contracting officer. Federal acquisitions, and the role of the contracting officer, are governed by the FAR. This regulation is promulgated under chapter 13 of title 41 of the U.S. Code. The statute establishes "a Federal Acquisition Regulatory Council," 41 U.S.C. § 1302, with members authorized to issue and maintain the FAR. *Id.* § 1303(a)(1). Under the FAR, the contracting officer plays important roles. The contracting officer determines whether and to whom a contract should be awarded by applying the terms of the solicitation, the FAR, and other governing authority. *See* FAR § 15.303. In the case of a dispute between the government and the contracting party after a contract has been awarded, the contractor can submit a dispute directly to the contracting officer under the Contract Disputes Act. 41 U.S.C. § 7103(a)(1). The contracting officer's decision is then subject to review by an agency board or the Claims Court. *Id.* § 7104.

In contrast, in most bid protests, the contracting officer is not charged with initially resolving a bid protest dispute. Under the statute, a protestor may file a protest at Government Accountability Office or the Claims Court.[2] *See* 41 U.S.C. § 3708(a)(1); 31 U.S.C. § 3552(a); 4 C.F.R.

---

[2]    A protestor may also file a protest directly with the contracting officer, as established by Executive Order No. 12,979, 60 Fed. Reg. 55171 (Oct. 25, 1995). *See* FAR § 33.103.

21.1(c); 28 U.S.C. § 1491(b)(1). When such disputes are presented to the Claims Court, the plaintiff must be an "interested party," 28 U.S.C. § 1491(b)(1), that is, a party with a substantial chance of securing the award. *See Info. Tech. & Applications Corp.*, 316 F.3d at 1319 (statutory standing). The Claims Court in some instances must make the statutory standing determination, i.e., whether the plaintiff is an interested party. This determination by the Claims Court is required when the plaintiff is arguing that the contracting officer made an error in evaluating the bid of another contractor. *Myers*, 275 F.3d at 1370; *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1359 (Fed. Cir. 2018). This is so even though statutory standing is no longer treated as a jurisdictional issue. We see nothing in *Lexmark* that suggests that in such cases the Claims Court may not initially determine whether a plaintiff is an "interested party," though such an initial determination is not required before addressing the merits, because statutory standing is not jurisdictional.

In such instances where the Claims Court elects to make a determination of statutory standing, the Claims Court is charged only with making a preliminary determination ("substantial chance") with respect to the plaintiff's chances of securing the contract, rather than a final merits determination of contract entitlement. *See Digitalis*, 664 F.3d at 1384. Unless some exception to the *Chenery* doctrine permits final decision by the Claims Court, for example, the issue to be decided is purely legal, a remand to the agency is required to make the final determination of contract entitlement. *See Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1291 (Fed. Cir. 2020) (describing *Chenery* remand exceptions).

However, the present case is different from *Myers* and *CliniComp* in that CACI is not challenging an award to a third party based on some defect in the solicitation process, but is rather challenging the contracting officer's determination that CACI's own bid had disqualifying deficiencies.

In this context, the statutory standing issue and the merits issue are overlapping. Every merits issue to a bidder's qualifications is also a statutory standing issue. As the government admitted at oral argument, the technical deficiencies issues here could themselves be viewed as statutory standing issues. *See* Oral Arg. at 19:22–20:51; *see also COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1383 (Fed. Cir. 2012) ("[T]he propriety of the marginal Quality/Capability rating assigned to Comint by the agency is determinative of both Comint's standing and the merits.").

In such a situation, allowing the Claims Court to determine statutory standing de novo would be to allow the Claims Court to determine the merits de novo, when the statute and regulations clearly provide that CACI's OCI compliance is to be determined initially by the contracting officer and reviewed by the Claims Court based on the agency record and an arbitrary and capricious standard.

Congress has primarily placed the matter of OCI determinations in the hands of the contracting officer. "[T]he FAR recognizes that the identification of OCIs and the evaluation of mitigation proposals are fact-specific inquiries that require the exercise of considerable discretion." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1382 (Fed. Cir. 2009) (citing FAR § 9.505). We have emphasized the importance of the arbitrary and capricious standard for reviewing a contracting officer's actions in bid award decisions. *Id.* at 1381–82.

In *Axiom*, Axiom, an unsuccessful bidder, challenged the award of a contract to another bidder, Lockheed, alleging that Lockheed had an OCI. *Id.* at 1377–78. The contracting officer had reviewed Lockheed's alleged OCI and concluded that the OCI was appropriately mitigated. *Id.* Axiom filed a complaint at the Claims Court, alleging that the government violated the FAR's OCI provisions and seeking to supplement the record with affidavits not before the contracting officer. *Id.* at 1378–79. The Claims Court

allowed Axiom to supplement the record and held, based on the supplemented record, that there was an OCI in violation of FAR § 9.5. In doing so, the court did not apply the arbitrary and capricious standard. *Id.* at 1379. On appeal, we held that the Claims Court erred by essentially conducting a de novo review of the OCI issue and in allowing Axiom to supplement the record before the contracting officer. *Id.* at 1381.

Here, too, the Claims Court erroneously conducted a de novo review of CACI's purported OCI. Where, as here, issues of statutory standing and merits overlap and there is no *Chenery* exception, the Claims Court has no authority to conduct its own de novo determination of the issue based on a record made in the Claims Court.[3]

To be sure, when a losing bidder is challenging the contracting officer's determination, the disappointed bidder must establish that it was prejudiced by the contracting officer's action. *See Oracle Am., Inc.*, 975 F.3d at 1290–92. The issue of prejudice is related to the issue of statutory standing. *See Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) (describing various formulations of prejudice). Here, the government could assert that any error in the technical deficiencies determination would have been harmless if CACI had a disqualifying conflict of interest. But as with statutory standing under *Lexmark*, the issue of prejudice is no longer jurisdictional unless it implicates Article III considerations, and our cases to the contrary are no longer good law. The issue of prejudice can properly be resolved by the Claims Court initially only if under *Chenery* the issue need not be remanded to the agency, for example, if the issue is a purely legal question, *Oracle Am., Inc.*, 975 F.3d at 1291, which is not the case

---

[3]    This conclusion is not intended to suggest that the Claims Court cannot make jurisdictional determinations in the first instance.

here. Typically, however, if the issue has not been addressed in the first instance by the contracting officer, a remand is necessary for the contracting officer to address the issue of prejudice.

In the context of appeals from other agency decisions, the Supreme Court has held that, "[g]enerally speaking, a [reviewing court] should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam). This is because "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).[4] In general, a declaration from a contracting officer as to how she would resolve the case is no substitute for a remand where the challenging party would have a full opportunity to present the case to the contracting officer. *See* FAR § 9.504(e) ("Before determining to withhold award based on conflict of interest considerations, the contracting officer shall notify the contractor, provide the reasons therefor, and allow the contractor a reasonable opportunity to respond.").

Given our determination as to the contracting officer's evaluation of the technical deficiencies (discussed below), there is no need to consider a remand to the contracting officer in this case to consider the OCI allegations.[5]

---

[4]    *See also*, *e.g.*, *Turner Const. Co. v. United States*, 645 F.3d 1377, 1386–87 (Fed. Cir. 2011) (finding no error in the Claims Court's deferential consideration of a contracting officer's post-award OCI investigation and analysis).

[5]    CACI raises concerns about the effect of the Claims Court's OCI decision on its eligibility and competitiveness

14                          CACI, INC.-FEDERAL v. US

## II.    CACI's Technical Deficiencies

We review the Claims Court's assessment of agency actions without deference, reapplying the same standard of review applicable in the Claims Court. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). We consider whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Bannum*, 404 F.3d at 1351.

We consider only the first technical deficiency because it is determinative. There is evidence that the dongle in CACI's proposal would protrude from the device. The Army assigned a technical deficiency to CACI's proposal for failing to include the measurements of the proposed dongle used for two-factor authentication, making it "unclear if the proposed design meets the [device] length . . . requirement[]" when the dongle is inserted. Appellant's Br. at 44 (quoting J.A. 5137).

CACI argues that the Army's determination was an abuse of discretion for two reasons.

First, CACI argues that the dongle was not "operational hardware" and thus did not need to be included in

---

for contracts in the future. Based on these concerns, CACI asks that we clearly rule there was no OCI. Oral Arg. at 0:16-0:36, 2:26-2:50. While we are not unsympathetic to CACI's concerns, we conclude that the issue need not and should not be resolved in this appeal, just as the Claims Court could not properly resolve it de novo. We note, however, that because we vacate the OCI finding (and the contracting officer's declaration) without remanding for a final determination on the issue, the Claims Court's OCI findings have no preclusive effect.

the device measurements.  CACI points to the size require-
ment, which states:

> The NGLD-M operational hardware used to per-
> form NGLD-M functions shall not exceed the
> length of 7.75", width of 4.5", and depth of 2.5".  The
> NGLD-M operational hardware used to perform
> NGLD-M functions shall not exceed 8 pounds. (In-
> cluding batteries as well as system components and
> accessories).  The operational hardware may con-
> tain primary device, batteries and accessories re-
> quired to operate the NGLD-M.    Battery
> installation is included for [size] requirements.
> Standalone cables that provide a means of interfac-
> ing with systems, devices or power sources that are
> outside of the NGLD-M system context are exempt
> from the [size] requirements.  Contractors shall not
> use proprietary standalone cables.

J.A. 1334 (emphasis added).  CACI argues that the lan-
guage "[t]he operational hardware <u>may contain</u>," *id.* (em-
phasis added), suggests that the Army considered some
accessories not to be "operational hardware."  CACI further
points to the language, "Standalone cables that provide a
means of interfacing with systems, devices or power
sources that are outside of the NGLD-M system context are
exempt from the [size] requirements," *id.*, as evidence that
not all accessories are operational hardware.  Accordingly,
CACI argues that there is a latent ambiguity in the pro-
posal that should be construed against the government.

However, there is no ambiguity as to whether CACI's
proposed dongle is operational hardware as that term is
used in the proposal.  As set forth in the block quote above,
the requirement is clear that "operational hardware" is
"used to perform NGLD-M functions" and "required to op-
erate the NGLD-M." J.A. 1334.  As the contracting officer
determined, CACI's dongle is required to operate the device
because without it, a user could not initiate a session.

Thus, the contracting officer was correct to find the dongle to be operational hardware.

Second, CACI argues that the Army treated offerors differently with regard to the size requirement because one of the other offerors was not assigned a deficiency for failing to include its authentication device in its measurements. Disparate evaluation claims are analyzed under a "substantively indistinguishable" standard. *Off. Design Grp. v. United States*, 951 F.3d 1366, 1373 (Fed. Cir. 2020). Under this standard, the protestor must show that the deficiencies assigned to its proposal were "substantively indistinguishable" from those contained in other proposals. *Id.* at 1372–73. CACI did not do so here.

It is true that the other offeror did not provide the measurements of its proposed authentication device. However, the other offeror proposed a different solution from CACI's to meet the two-factor authentication requirements. This solution involved a small cartridge that is inserted into a housing unit already built into the device. Accordingly, it is possible that inserting the cartridge would not affect the size of the device. In contrast, CACI proposed an external dongle that had to be inserted into a USB-C port, a solution that the Army reasonably determined could impact the dimensions of the device when the dongle was inserted. CACI had the burden of showing that the two solutions are "substantively indistinguishable," a burden CACI failed to meet.

Therefore, the Army reasonably assigned a technical deficiency under the size requirement. A single deficiency renders the proposal "unawardable." J.A. 1594. The Claims Court did not err in sustaining the contracting officer's finding of a technical deficiency.

## CONCLUSION

For the foregoing reasons, we conclude that the Claims Court's statutory standing determination was erroneous

because the Claims Court improperly addressed the non-jurisdictional question  of statutory standing de novo despite the absence of any *Chenery* exception, but we nonetheless affirm the ultimate determination.

**AFFIRMED-IN-PART AND VACATED-IN-PART**

C̲OSTS

No costs.