NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**UTECH, INC., DBA ENDOSOFT,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, PROVATION SOFTWARE, INC.,**
*Defendants-Appellees*

---

2024-1586

---

Appeal from the United States Court of Federal Claims in No. 1:22-cv-01452-MBH, Senior Judge Marian Blank Horn.

---

Decided:  June 24, 2026

---

ALAN GRAYSON, Indialantic, FL, argued for plaintiff-appellant.

GEOFFREY M. LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE; ALEIA BARLOW, SHAWN LARSON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

ALEX P. HONTOS, Dorsey & Whitney LLP, Minneapolis, MN, argued for defendant-appellee Provation Software, Inc.

_____

Before PROST, CUNNINGHAM, and STARK, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

Utech, Inc., d/b/a EndoSoft ("Utech") appeals a decision of the United States Court of Federal Claims dismissing all claims of Utech's bid protest complaint. *Utech, Inc. v. United States*, 171 Fed. Cl. 58 (2024) ("*Decision*"). For the reasons discussed below, we *affirm*.

## I. BACKGROUND

This appeal concerns a post-award bid protest challenging a decision by the United States Department of Veterans Affairs ("VA") to award a contract for an endoscopy information system ("EIS") to appellee Provation Software, Inc. ("Provation"). *Decision* at 60; J.A. 12342.

In January 2021, the VA issued Solicitation No. 36C10G20Q0050 ("Solicitation") seeking offers for an "Indefinite Delivery-Indefinite Quantity (IDIQ) Brand Name or Equal contract for an [EIS]." J.A. 10918; *Decision* at 60. The Solicitation described the award as "VA-wide" and "national." J.A. 10926. Relevant to this appeal, the Solicitation required submissions of proposed pricing for various contract line items listed in a Price/Cost Schedule ("Schedule"), J.A. 10945–59, explaining:

> This is a Requirements contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies or services specified in the Schedule are estimates only and are not purchased by this contract. Except as this contract may otherwise provide, if the Government's requirements do not result in orders

in the quantities described as "estimated" or "maximum" in the Schedule, that fact shall not constitute the basis for an equitable price adjustment.

J.A. 10975; *Decision* at 62. The estimated quantities listed in the Schedule are multiples or factors of 24. J.A. 10945–59. The Solicitation also included a list of at least 148[1] VA medical facilities throughout the United States. *See* J.A. 10914–15.

During bidding, the VA addressed questions posed by potential bidders. J.A. 10905–08. Several questions requested clarification about the number of sites and quantities required per the Schedule. *Id.* The VA responded to one question, for example, that the Schedule was based off of "[t]wenty-four (24) [sites] annually. The quantities provided are estimates only, and VA makes no guarantee regarding the actual quantities that may be purchased." J.A. 10905; *Decision* at 63–64.

Proposals were due on February 16, 2021. *Decision* at 64. The VA received four proposals from: (1) Summit Imaging Inc.; (2) Thundercat Technology, LLC; (3) Provation; and (4) Namtek Corp.[2] *Id.* Utech did not submit its

---

[1] The list of facilities included with the Solicitation includes 148 facilities. J.A. 10914–15. Utech notes that the entire VA health network has 151 locations and refers to that number in its arguments. Appellant's Br. 12 (citing J.A. 10160–61, 10165); *see* Oral Arg. 08:13–08:28, https://www.cafc.uscourts.gov/oral-arguments/24-1586_01 072026.mp3. The exact number makes no difference for the purposes of this appeal other than the fact that both 148 and 151 are significantly more than 24.

[2] Namtek submitted a bid offering the Utech brand EIS, but Utech informed the VA prior to selection that Namtek had been debarred and was thus no longer a viable offeror. *Decision* at 64; J.A. 68 ¶¶ 21–22.

own bid as a prime contractor.  *Id.*; J.A. 68 ¶ 20.  The VA ultimately made an award to Provation effective September 29, 2022.  *Decision* at 64; J.A. 12342.

After the bidding deadline but before the award, on April 1, 2022, Utech filed an agency-level protest with the VA, J.A. 71 ¶ 32, which was dismissed without reaching the merits on May 6, 2022, *id.*; *Decision* at 65.  Utech then filed a protest at the United States Government Accountability Office, which was likewise dismissed on July 29, 2022.  *In re Utech, Inc.- dba EndoSoft*, B-420755, 2022 WL 3026804, at *1 (Comp. Gen. July 29, 2022).  On October 5, 2022, Utech filed a protest at the Court of Federal Claims asserting three counts in its complaint.  J.A. 53, 57–76.

In Count I, Utech argued that "[t]he agency decision to characterize the contract award [ ] as universal and exclusive throughout the VA health system . . . is:  (a) contrary to the terms of the Solicitation, or (b) a change so substantial as to require re-solicitation, or (c) an out-of-scope or 'cardinal' change."  J.A. 72–73 ¶ 34.  In Count II, Utech argued that "[t]he agency [ ] changed the evaluation procedures in mid-stream . . . without amending the Solicitation" or "allowing new offerors" and that the change "would have had a material effect on [Utech's] decision on whether to submit a proposal."  J.A. 74 ¶ 38.  In Count III, Utech argued that "the 'tier' provision in the Solicitation was no longer appropriate," and "there was no rational basis to determine the contract price to be fair and reasonable" because there was not "adequate competition to support a contract award."  J.A. 75 ¶ 42.

The government and Provation filed motions to dismiss Utech's complaint under Court of Federal Claims Rules 12(b)(1)[3] and 12(b)(6) on October 14, 2022.  J.A. 53–54;

---

[3]    Following this court's decision in *CACI, Inc.-Federal v. United States*, 67 F.4th 1145, 1151–52 (Fed. Cir.

*Decision* at 66.  The Court of Federal Claims determined that (1) Utech was not an "interested party" under 28 U.S.C. § 1491(b)(1) because it chose not to submit a proposal or protest the terms of the Solicitation before the due date for proposals, *Decision* at 73–78, 93; (2) Utech failed to sufficiently plead its cardinal change claim, *id.* at 78–80; and (3) Utech had waived its opportunity to challenge the language of the Solicitation under the *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007) waiver rule because Utech did not raise its challenge before proposals were due, *Decision* at 80–93.  The court accordingly granted the government's and Provation's motions to dismiss and dismissed all counts of Utech's complaint for failure to state a claim.  *Decision* at 93.

Utech timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

We review de novo dismissal of a complaint for failure to state a claim.  *Taylor v. United States*, 959 F.3d 1081, 1086 (Fed. Cir. 2020) (citation omitted).  "The complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief."  *Id.* (internal quotation marks omitted) (quoting *Palmyra Pac. Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1366–67 (Fed. Cir. 2009)).  "[A]t this stage of the proceedings we must accept the facts alleged in the complaint and draw all

---

2023), which held that the issue of statutory standing and whether a party is an "interested party" under the Tucker Act is not a jurisdictional question, the Court of Federal Claims sua sponte considered the "motion[s] to dismiss on standing grounds as motions to dismiss for failure to state a claim."  *Decision* at 73.

reasonable inferences in favor of the plaintiff[.]" *Palmyra*, 561 F.3d at 1366 (citation omitted).

We review de novo the legal conclusions of the Court of Federal Claims. *Stearns Co. v. United States*, 396 F.3d 1354, 1357 (Fed. Cir. 2005). "We review determinations of standing under the Tucker Act de novo." *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1374 (Fed. Cir. 2024). Likewise, "[w]hether an ambiguity or defect is patent is an issue of law reviewed de novo." *M.R. Pittman Grp., LLC v. United States*, 68 F.4th 1275, 1283 (Fed. Cir. 2023) (quoting *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312 (Fed. Cir. 2016)).

## III. DISCUSSION

Before this court, Utech argues that the Court of Federal Claims erred in dismissing its complaint for failure to state a claim because (1) Utech is an "interested party" under the Tucker Act and accordingly has statutory standing to challenge the contract award, Appellant's Br. 29–37; and (2) Utech did not waive its opportunity to challenge the Solicitation under *Blue & Gold*. Appellant's Br. 37–52. We address each argument in turn.

### A.

Utech argues that it is an "interested party," and therefore has statutory standing to challenge the contract award under 28 U.S.C. § 1491(b)(1), because Utech is an "actual or prospective offeror in the procurement of [EIS]" with the "50+ VA locations it currently serves" and Utech indicated that "it will bid on any reopening of this procurement." Appellant's Br. 30. We disagree.

Under the Tucker Act, the Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract . . . ." 28 U.S.C. § 1491(b)(1); *see CACI*, 67 F.4th at 1151. Only an

"interested party" has "statutory standing" to challenge the award of a contract at the Court of Federal Claims. *CACI*, 67 F.4th at 1152. An "interested party" is an "actual or prospective bidder[ ] or offeror[ ] whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Id.* at 1151 (alterations in original) (quoting *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)). "To prove a direct economic interest, a party must show that it had a substantial chance of winning the contract." *Id.* (internal quotation marks omitted) (quoting *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012)).

The Court of Federal Claims did not err in its determination that Utech was not an "interested party." It is undisputed that Utech "did not bid, and therefore, it is not an 'actual bidder.'" *Rex Serv.*, 448 F.3d at 1307; *see* Appellant's Br. 14; Government Br. 5; Provation Br. 3; *Decision* at 64. Utech likewise is not a prospective bidder. "[T]he opportunity to qualify either as an actual or prospective bidder ends when the proposal period ends[.]" *MCI Telecomms. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989) (construing "interested party" under 40 U.S.C. § 759(f)(9)(B) (repealed 1996)); *see Rex Serv.*, 448 F.3d at 1307 (applying the definition of "interested party" from *MCI* to the Tucker Act). "[I]n order to be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." *MCI*, 878 F.2d at 365 (emphasis omitted). Thus, a "prospective bidder . . . does not include one who only intends to bid in the event of a reprocurement." *Fed. Data Corp. v. United States*, 911 F.2d 699, 704 (Fed. Cir. 1990) (internal quotation marks omitted) (interpreting 40 U.S.C. § 759(f)(9)(B) (repealed 1996)). Utech neither bid on the Solicitation nor filed a protest before the deadline to submit proposals. *See* Appellant's Br. 45; J.A. 71–72 ¶ 32; *Decision* at 78 (noting Utech "did not file its protest at the agency, and subsequently at the GAO, until approximately

one year after the Solicitation's stated deadline for proposals"). Despite arguing it was "prevented from bidding," Appellant's Br. 32, Utech had the opportunity to submit an offer before the proposal period ended and chose not to do so. *See* J.A. 67–68 ¶ 20 (Utech stating that its decision not to submit its own proposal was due to weighing competitive considerations and perceived limited scope of the contract). Utech "believed that its limited competitive interest was served by subcontracting to SDVOSBC Namtek, not by submitting what appeared to be a futile proposal to seize the prime contract." Appellant's Br. 14 n.20. "[B]ecause [Utech] could have bid, but chose not to, it cannot be considered a prospective bidder." *Rex Serv.*, 448 F.3d at 1308. To the extent that Utech argues it is a prospective bidder because "it will bid on any reopening of this procurement," Appellant's Br. 30, Utech's "stated intention to submit a proposal in response to any resolicitation . . . can do nothing to create the necessary interested party status." *MCI*, 878 F.2d at 365; *see Fed. Data Corp.*, 911 F.2d at 704.

In sum, the Court of Federal Claims did not err in its determination that Utech was not an "interested party" and lacked statutory standing to assert Counts II and III of its complaint.[4] *Decision* at 78.

B.

Utech argues that *Blue & Gold* waiver does not apply for two reasons: (1) Utech raised its protest at the appropriate time, Appellant's Br. 45–50; and (2) the Solicitation

---

[4]    Regardless of Utech's statutory standing to bring Count I, Utech has waived its opportunity to bring the Count I claim under *Blue & Gold*, as discussed *infra*. We need not resolve statutory standing before addressing the waiver issue because statutory standing is not a jurisdictional issue. *See CACI*, 67 F.4th at 1152.

was not patently ambiguous, *id*. 37–45.  We address each argument in turn.

i.

Utech argues that *Blue & Gold* waiver does not apply because it filed its protest after the close of bidding but before an award was made.  Appellant's Br. 45.  We disagree.

*Blue & Gold* waiver can apply when a party files its protest after the close of bidding but before an award was made.  In *Blue & Gold*, we held:

> [A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.

492 F.3d at 1313.  *Blue & Gold* involved a protestor who filed a protest after award of the contract.  *Id*. at 1311–12.  However, the subsequent "extension" of *Blue & Gold* to "all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so" indicates that the "close of the bidding process" means the deadline to submit bids.  *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012).  Rather than curtailing *Blue & Gold*'s applicability by holding that a protest is *not* waived if it is filed between the close of bidding and the award, *COMINT* expanded *Blue & Gold*'s applicability even to situations in which a party may not have had the opportunity to challenge a provision in a solicitation before the close of bidding but nevertheless delayed post-closing of the bidding process.  *COMINT*, 700 F.3d at 1382–83.

Unlike *COMINT*, in which an amendment issued between the close of bidding and award of the contract, *id*. at 1380, 1382–83, Utech had the opportunity to object to the Solicitation prior to the close of bidding but did not.  *See*

J.A. 67–68 ¶ 20.  Because we hold that *Blue & Gold* waiver can apply, we turn to whether it does, namely, whether the Solicitation "contain[s] a patent error."    *Blue & Gold*, 492 F.3d at 1313.

ii.

Utech's Count I "[c]hange in [s]cope," J.A. 72, or "cardinal change" claim[5] relies on its argument that the scope of the contract was limited to 24 VA medical centers but was later extended to 151 locations across the country.  Appellant's Br. 39.  Utech argues that it did not waive its claim under *Blue & Gold* because: (1) the Solicitation is either "unambiguously [ ] not universal and exclusive;"[6] or, alternatively, (2) there is a "latent ambiguity" and not a "patent ambiguity."  Appellant's Br. 38.  We disagree.

Any ambiguity in the Solicitation was patent, and Utech waived its claim under *Blue & Gold*.  Waiver based on the patent ambiguity doctrine applies "against [the party] challenging the terms of a government solicitation."

---

[5]    A cardinal change "is a drastic modification beyond the scope of the contract." *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1543 (Fed. Cir. 1996).  Similarly, in the bid protest context, modifications exceed the scope of the contract when "[g]overnment modifications change[ ] the contract enough to circumvent the statutory requirement of competition." *AT & T Commc'ns Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993).  The inquiry focuses on "whether the modification is within the scope of the competition conducted to achieve the original contract." *Id.*

[6]    Utech argues that there is no error in the contract because the Solicitation was unambiguously limited to 24 VA centers and "not universal and exclusive."  Appellant's Br. 38–39; *id.* at 41–42.  Utech is incorrect.  As discussed below, the Solicitation is ambiguous (and, we find, patently so) as to the quantity of sites to be served.

*Blue & Gold*, 492 F.3d at 1314. "Under the doctrine, where a government solicitation contains a patent ambiguity, the [party challenging the solicitation] has a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation in a subsequent action against the government." *Id.* at 1313 (cleaned up). "Solicitation language is ambiguous if its language is susceptible to more than one reasonable interpretation." *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1310 (Fed. Cir. 2016) (cleaned up). "A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000). By contrast, a "latent ambiguity is a hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable and customary care, and is not so patent and glaring as to impose an affirmative duty on [a contractor] to seek clarification." *Per Aarsleff*, 829 F.3d at 1312 (quoting *Analytical & Rsch. Tech., Inc. v. United States*, 39 Fed. Cl. 34, 46 (1997)). If the ambiguity in the Solicitation were latent, then waiver does not apply. *COMINT*, 700 F.3d at 1382 & n.5. If the ambiguity were patent, then Utech waived its protest ground by failing to raise the issue before the close of the bidding process. *Blue & Gold*, 492 F.3d at 1313.

We conclude that any ambiguity was patent, and thus Utech waived its claim under *Blue & Gold*. Utech specifically argues that, although the Solicitation allows for the contract to be extended from one year up to four more years, J.A. 10928 § 3.2; J.A. 10928–29 § 3.6, the services provided for those five years would be limited to the same 24 legacy sites, Oral Arg. 01:50–02:28. In other words, Utech argues that the 24 legacy sites are the ceiling of what is covered by the contract. Oral Arg. 04:54–05:44 (explaining that the Solicitation only allows for "[u]p to that many"

sites).  In support of this interpretation, the Schedule in-
cluded items in factors and multiples of 24, J.A. 10945–59,
and several provisions in the Solicitation involved migra-
tion of existing endoscopy data from legacy sites, *see* Appel-
lant's Br. 8–10.  Section 4.3, for example, required support
for migration for those sites using the Olympus EndoWorks
system, J.A. 10622–23 § 4.3, which Utech argues was only
potentially necessary at 24 locations, Appellant's Br. 5–
6 n.6; *id.* at 42.  Salient Characteristic 6 for potential con-
tractors likewise required data migration capabilities.
J.A. 10926–27 § 2.0.

However, even though some of the Solicitation pointed
to 24 sites, other language was facially inconsistent with
Utech's interpretation of the Solicitation as establishing a
maximum of 24 sites and would have put a reasonable con-
tractor on notice to inquire about those inconsistencies.
The Solicitation described the EIS as "VA-wide" and "na-
tional," J.A. 10926, and the Solicitation included as an at-
tachment a list of 148 or 151 centers across the country,
Oral Arg. 08:13–34 (discussing 151 centers); J.A. 10914–15
(identifying 148 centers).  The Solicitation also indicated
that the contract was a "Requirements contract" and quan-
tities listed in the Schedule were "estimates," J.A. 10975,
as explained in the Q&A incorporated into the Solicitation.
J.A. 10905–08; *see, e.g.*, J.A. 10908 ("You should provide a
proposal that meets the requirement for Twenty[-]four (24)
VA Facilities annually.  The quantities provided are esti-
mates only[.]").  Additionally, the government's answers in
the Q&A stated that the quantity for one item (CLIN 0021)
"increases by 24 each year," J.A. 10907, and that the Sched-
ule was based off "[t]wenty[-]four (24) annually,"
J.A. 10905.  The combination of the Solicitation's inclusion
of four additional option years, J.A. 10928–29, with lan-
guage about annual estimates of 24 leads to an alternative
reasonable interpretation of the estimated quantity to be
potentially 120 sites (24 × 5).  Put another way, the Solici-
tation could reasonably be read to cover an estimate of 24

different sites for each of the option years, not merely the same 24 sites repeatedly. Other than pointing to the 24 legacy facilities on the facilities list, Utech was unable to provide a citation to a section of the Solicitation that indicated unambiguously that the 24 sites were meant to be a maximum limiting the government rather than a minimum annual estimated capability required of the contractor. Oral Arg. 50:26–52:11.

A reasonable contractor would have been on notice of the parts of the Solicitation that were inconsistent with an interpretation that the contract was limited to exclusively the 24 legacy locations and would have been "prompt[ed] . . . to rectify the inconsistency by inquiring of the appropriate parties." *Stratos*, 213 F.3d at 1381. Indeed, multiple potential offerors did inquire about the number of sites to be served, J.A. 10905–08, a fact supporting a determination that the Solicitation contained a patent ambiguity, *see Per Aarsleff*, 829 F.3d at 1312–13. Because any ambiguity in the Solicitation was patent, and because Utech did not raise its protest ground before the close of the bidding process, Utech waived its right to assert Count I.[7] *Blue & Gold*, 492 F.3d at 1313.

## IV. CONCLUSION

We have considered Utech's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

## AFFIRMED

---

[7] As to Utech's argument that *Blue & Gold* should not apply when "a challenge rests on a statute or regulation that is protective of the contractor," Appellant's Br. 50–51, Utech fails to cite any controlling authority for this proposition, and we decline to create an exception to *Blue & Gold* in this case.